STATE OF CONNECTICUT *v.* LONNIE BLACK
(7725)

LAVERY, CRETELLA and LANDAU, Js.

Argued June 13—decision released September 18, 1990

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Geoffrey E. Marion,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, and *Lawrence J. Daly,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and one count of risk of injury to a child in violation of General Statutes § 53-21. He claims that the trial court (1) should have disclosed to him certain notes taken by the state's attorney during an interview with the victim, and (2) should have allowed the defendant to present the testimony of the victim's former attorney regarding an alleged prior inconsistent statement. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. The victim, who is the defendant's biological son, was born out of wedlock in 1974. During his infancy and early childhood, he lived with various relatives, never with any one relative for more than a few years. In October, 1983, the victim began visiting the defendant and his girl friend on weekends on a regular basis. A few weeks after these visits began, the defendant initiated sexual contact with the victim that, within a short time, included anal intercourse. These incidents of abuse occurred on a weekly basis for approximately three years. During that time, the defendant's girl friend, Justina Mendes, became involved, watching and commenting on the defendant and the victim and engaging in sexual intercourse with the defendant while the victim watched.

In May, 1986, the defendant stopped exercising his visitation rights and the victim's weekend visits to the defendant's apartment stopped. Angry and hurt over the defendant's refusal to see him, the victim told his mother about the sexual abuse. After an extended course of counseling and psychological therapy, the victim gave a statement to the Hartford police, who arrested the defendant and Mendes.

The defendant first claims that the trial court should have ordered the state to produce certain notes taken by the assistant state's attorney during an interview with the victim. He argues that the notes came within the definition of "statements" contained in Practice Book § 749, and that he was entitled to disclosure of the notes pursuant to Practice Book § 752. We disagree.

Practice Book § 752 provides that "[a]fter a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement

of the witness in possession of the state . . . which statement relates to the subject matter about which the witness has testified." The pertinent portion of § 749 defines a "statement" as "a written statement made by a person and signed or otherwise adopted or approved by him."[1] The first, essential, determination to be made by the trial court is whether the evidence constituted a "statement." *State* v. *Monteeth*, 208 Conn. 202, 216, 544 A.2d 1199 (1988). In making this determination, the trial court exercises broad discretion; *United States* v. *Allen*, 798 F.2d 985, 994 (7th Cir. 1986); *United States* v. *Pepe*, 747 F.2d 632, 657 (11th Cir. 1984); and its findings will be disturbed only if they are clearly erroneous. *United States* v. *Pepe*, supra.

The trial court examined the notes in camera and questioned the victim as to the way in which the notes were taken. The judge handed the notes to the victim and the following colloquy ensued:

"The Court: Have you had a chance to see those pages?

"The Witness: Yes.

"The Court: Have you ever seen them before?

"The Witness: No.

"The Court: Did [the state's attorney] ever hand them to you to read?

"The Witness: No.

"The Court: Did he ever read you those three pages, to your knowledge?

"The Witness: I don't think so. No.

"The Court: And is your signature anywhere on them?

---

[1] Another definition in Practice Book § 749 concerns verbatim recordings made contemporaneously with the making of the statement. The notes in question were not a transcription of such a recording and therefore do not fall within this section.

"The Witness: No."

Thereafter, defense counsel questioned the victim as follows:

"Q. After [the state's attorney] took the notes did he go back and say, 'Is this the way it is,' those notes, and ask you if this is substantially correct?

"A. Yes.

"Q. And you said 'yes?'

"A. Yes.

"Q. And you said—basically told him his notes were accurate and portrayed what happened?

"A. Yes."

The trial court concluded that the notes did not constitute a statement within the meaning of § 749 because the witness did not sign or otherwise adopt or approve the notes. The voir dire supports this conclusion. The witness testified that he did not sign the notes, that the assistant state's attorney never read them to him, and that he had never read or even seen them before. Although he also testified that the assistant state's attorney asked whether the notes were substantially correct, the witness' affirmative answer to this question is insufficient to show adoption or approval of the notes as a statement of the witness. A general affirmation by a witness that the interviewer's notes capture the basic gist of their conversation, in the absence of a showing that the witness read or was read what the interviewer has written, does not constitute adoption or approval of the notes. See *Goldberg* v. *United States,* 425 U.S. 94, 110–11 n.19, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976) (construing the nearly identical provisions of the Jencks Act, 18 U.S.C. § 3500).[2]

---

[2] The cited footnote reads in full: "Every witness interview will, of course, involve conversation between the lawyer and the witness, and the lawyer will necessarily inquire of the witness to be certain that he has correctly understood what the witness has said. Such discussions of the general substance of what the witness has said do not constitute adoption or approval of the lawyer's notes within [18 U.S.C.] § 3500 (e) (1), which is satisfied only

The defendant's second claim is that the trial court should have allowed Louis Keifer, the attorney who represented the victim in an earlier Probate Court action, to testify as to an alleged prior inconsistent statement concerning when Mendes began to participate in the sexual abuse. At trial, the victim testified that Mendes started to participate approximately one year after the abuse first began. Keifer was prepared to testify that in the probate hearing, the victim testified that Mendes joined the abuse only six weeks after it began.[3] The trial court refused to allow Keifer to testify.

To be admissible, proof that the witness made a prior statement inconsistent with his trial testimony must show a substantial inconsistency and must relate to a material issue rather than a collateral matter. *State* v. *Avis,* 209 Conn. 290, 302, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989). With regard to the defendant's prosecution, the timing of Mendes' intervention into the abuse was irrelevant to the question of whether the defendant was guilty of sexual assault. The information in the defendant's prosecution alleged a three year period during which the assaults occurred. Moreover, the defendant's sole defense was to claim that the sexual assaults and abuse did not occur, not to challenge the time frame alleged in the complaint. See *State* v. *Mancinone,* 15 Conn. App. 251, 255–59, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489

when the witness has 'signed or otherwise adopted or approved' what the lawyer has written. This requirement clearly is not met when the lawyer does not read back, or the witness does not read, what the lawyer has written." *United States* v. *Goldberg,* 425 U.S. 94, 110–11 n.19, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976).

[3] Another proffered inconsistency concerned whether the victim had ever told anyone that Mendes began to participate six weeks after the abuse began. He testified at trial that he had not. The defendant proposed to use Keifer's testimony to contradict that answer.

U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). It was of no moment in the defendant's prosecution, therefore, whether Mendes participated in the abuse over a period of two years or almost three years. See *State* v. *Bergin,* 214 Conn. 657, 674, 574 A.2d 164 (1990); *State* v. *Cates,* 202 Conn. 615, 626, 522 A.2d 788 (1987). The subject of Keifer's proffered testimony, therefore, concerned a collateral matter and it was well within the trial court's discretion to exclude his testimony. *State* v. *Avis,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.