STATE OF CONNECTICUT *v.* DAVID C. WITYAK
(10721)

DALY, FOTI and LAVERY, Js.

Argued September 16—decision released November 10, 1992

*Mary Miller Haselkamp,* assistant public defender, for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Nancy Dolinsky,* deputy assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1).[1] On appeal, the defendant claims that the trial court improperly admitted into evidence the testimony of state witnesses whose pretrial statements were not disclosed by the state as required under General Statutes § 54-86b[2]

---

[1] The defendant was also charged with one count of operating a motor vehicle while the ratio in the blood of such person is ten-hundredths of one percent or more of alcohol, by weight, in violation of General Statutes § 14-227a (a) (2). He was found guilty on that count also. The trial court, in effect, dismissed that second count by not imposing a sentence on it.

[2] General Statutes § 54-86b provides: "(a) In any criminal prosecution, after a witness called by the prosecution has testified on direct examination, the court shall on motion of the defendant order the prosecution to produce any statement oral or written of the witness in the possession of the prosecution which relates to the subject matter as to which the wit-

and Practice Book § 752.[3] The pretrial statements were not disclosed because the twenty-four hour broadcast tape on which they were recorded was erased according to routine police procedure.

From the evidence presented, the jury could reasonably have found the following facts. On September 10, 1990, at about noon, Francis Keith, the owner of a liquor store located on Main Street in Seymour observed a white Corvette parked across the street in a bank parking lot. Keith saw a male exit the Corvette and stagger across the street toward his establishment. When the male entered Keith's store, he asked to purchase two cases of beer. Keith recognized the defendant. Because the defendant smelled strongly of urine and slurred his speech, Keith believed the defendant was inebriated. He therefore denied the defendant's request to purchase some beer. The defendant then exited the premises. After staggering back across the street to his white Corvette, the defendant drove south in the northbound lane of the street.

Keith believed that the defendant might cause an accident and searched for a police officer without success. He noticed Michael Driscoll, the deputy fire marshal of Seymour, exit the restaurant adjacent to the liquor store. Keith approached Driscoll, explained what he had observed, and expressed his concern that the

ness has testified, and the court shall order said statement to be delivered directly to the defendant for his examination and use.

"(b) If the prosecution fails to comply with the order of the court, the court shall strike from the record the testimony of the witness and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared."

[3] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

defendant might cause an accident. Keith asked Driscoll to contact the police department by the town radio that Driscoll carried with him. Keith then returned to his store. Subsequently, Driscoll walked to his vehicle and used the radio to notify the police dispatcher, Officer Jill DeFelice, of the information that Keith had relayed to him.

Officer John Cronin received a radio dispatch while on patrol at about noon on the same day. The dispatch warned him to be on alert for a white Corvette operated by an intoxicated person. Cronin knew that the defendant owned a white Corvette. Consequently, he went to the defendant's residence on Brother's Court to see whether the defendant's Corvette was there. Upon arrival, he did not see the car in the defendant's driveway and searched the town in an attempt to locate it. Cronin drove by the defendant's driveway a number of times without seeing the car and then proceeded to police headquarters.

When Cronin returned to Brother's Court the Corvette was not at the defendant's residence. Cronin left Brother's Court by way of Chamberlain Road, the only outlet. While stopped at the intersection of Chamberlain Road, a dead-end street, and Walnut Street, Cronin saw a white Corvette turn onto Chamberlain Road from Walnut Street. As the Corvette passed his police cruiser, Cronin recognized the defendant as the operator of the Corvette. At that time, Cronin did not observe any erratic driving by the defendant. Cronin momentarily lost sight of the Corvette during the short time he took to turn his cruiser around to pursue the defendant. Cronin testified that throughout his investigation, he probably contacted the dispatcher on his police radio to update the department on his search.

At the defendant's residence, Cronin saw the Corvette parked in the defendant's driveway, with the

defendant standing alongside it. Cronin approached the defendant and asked to speak with him. The defendant's condition was poor. He was soaked with urine from the chest down, his eyes were glassed over, he appeared confused, and he had great difficulty walking.

Concluding that the defendant was highly inebriated, Cronin arrested him at 1:18 p.m. for operating a motor vehicle while under the influence of intoxicating liquor. The results of the defendant's breathalizer tests indicated that the defendant had a blood alcohol level of 0.33 percent at the time he was operating his vehicle prior to his arrest.

Before the defendant's trial commenced, the defendant filed three pretrial motions to preclude the testimony of Keith, Driscoll, and Cronin because the twenty-four hour tape containing the broadcasts by Driscoll and Cronin had been erased, effectively making the state's compliance with General Statutes § 54-86b and Practice Book § 748 et seq. impossible. The Seymour police department uses twenty-four hour tapes to record 911 calls, nonemergency calls, town radio transmissions, and department radio transmissions. The twenty-four hour tape is changed daily and is stored for one month before being reused. Thus, the recorded statements of Driscoll and Cronin were unavailable because the twenty-four hour tape in question had been reused according to routine procedure on October 10, 1990, one month after this incident took place.

After hearing the testimony of Keith, Driscoll, Cronin, and DeFelice,[4] the trial court denied the defendant's motions to preclude. The court found that Keith's conversation with Driscoll did not amount to a statement as defined in Practice Book § 749[5] because it was

---

[4] The state did not call DeFelice to testify at the trial.

[5] Practice Book § 749 provides: "The term 'statement' as used in Sec. 748 means:

not a verbatim transcription of Keith's comments. With respect to the testimony of Driscoll and Cronin, the trial court determined that the erasure of the tape was not executed in bad faith. The court found that the state's failure to preserve the tape did not prejudice the defendant and that the defendant's right to confront Driscoll and Cronin would not be impaired. The defendant took exception.

Following the state's direct examination of the three witnesses, the defendant requested production pursuant to Practice Book § 752 of all notes and statements made by the witnesses claiming that they were statements within the meaning of § 749. Because the broadcast tape had been reused, the statements on the broadcast tape were not available for cross-examination. Accordingly, the defendant moved to strike the testimony of Keith, Driscoll, and Cronin under Practice Book § 755.[6] The trial court denied each of these three motions for the same reasons it had denied the motions to preclude. The defendant took exception to each of the trial court's rulings.

The defendant challenges the trial court's denial of his motions to preclude and to strike because the trial court improperly determined that (1) Keith's conversation with Driscoll did not constitute a statement

"(1) A written statement made by a person and signed or otherwise adopted or approved by him; or

"(2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

[6] Practice Book § 755 provides: "If the prosecuting authority elects not to comply with an order of the judicial authority to deliver to the defendant any statement of a witness who has testified or such portion thereof as the judicial authority may direct, the judicial authority shall strike from the record the testimony of the witness, and the trial shall proceed unless the judicial authority, in his discretion, upon motion of the defendant, determines that the interests of justice require that a mistrial be declared."

under the definition in Practice Book § 749, (2) the broadcasts made by Driscoll and Cronin did not constitute statements under the definition set forth in Practice Book § 749, and (3) the state satisfied its burden of showing nonproduction of the recorded broadcasts to be harmless. We affirm the judgment of the trial court.

The defendant first claims that Keith's comments in his conversation with Driscoll constituted a statement subject to disclosure under Practice Book § 752. The defendant argues that the call made by Driscoll over the town radio was actually the statement of Keith, and, therefore, the trial court should not have admitted Keith's testimony because the state failed to disclose the recording of Driscoll's radio broadcast.

"Practice Book § 749 limits the disclosures governed by §§ 748 through 755 to two categories of materials: (1) A written statement made by a person and signed or otherwise adopted or approved by him; or (2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement. *State* v. *Myers,* 193 Conn. 457, 470, 479 A.2d 199 (1984)." (Internal quotation marks omitted.) *State* v. *Belle,* 215 Conn. 257, 266, 576 A.2d 139 (1990). Therefore, materials that satisfy either of the § 749 definitions must be disclosed by the state upon proper request by the defendant under Practice Book § 752. *State* v. *Cain,* 223 Conn. 731, 746–47, 613 A.2d 804 (1992); *State* v. *Hinton,* 196 Conn. 289, 301, 493 A.2d 836 (1985).

To determine whether the trial court properly allowed Keith's testimony into evidence, we must initially consider whether his conversation with Driscoll fell within the definition of statement set forth in Practice Book § 749. *State* v. *Monteeth,* 208 Conn. 202, 216,

544 A.2d 1199 (1988); *State* v. *Black,* 23 Conn. App. 241, 244, 579 A.2d 1107, cert. denied, 216 Conn. 827, 582 A.2d 204 (1990). The defendant claims that Keith's testimony falls within the second definition of "statement." We disagree.

The trial court ruled that the conversation was not a statement that the state was required to disclose under the requirements of Practice Book § 752. "[T]he trial court exercises broad discretion [in this determination] . . . and its findings will be disturbed only if they are clearly erroneous." (Citations omitted.) *State* v. *Black,* supra. The trial court's finding is supported by the fact that there is no indication that the conversation was taped or transcribed. Furthermore, Driscoll testified that when he contacted the police to inform them of Keith's observations, he spoke in his own words. Thus, he did not relay Keith's information verbatim. Nor was his call to the dispatcher made contemporaneously with Keith's comments. This demonstrates that the erased tapes did not contain a substantially verbatim recital of Keith's oral statements. Therefore, Keith's comments to Driscoll did not constitute a statement as defined in § 749 (2). Accordingly, we conclude that the trial court properly allowed Keith's testimony into evidence.

We turn to the defendant's second claim that the trial court improperly admitted the testimony of Driscoll and Cronin into evidence. The defendant argues that the state violated the disclosure provisions of the rules of practice when it failed to produce the twenty-four hour tape on which Driscoll's call over the town radio and Cronin's broadcast over the police radio were recorded. We find that the tape recording of Driscoll's call and Cronin's broadcasts were not statements according to the meaning of Practice Book § 749.

Before any court implements the disclosure provisions of the rules of practice, it must find that the statements in question fall within the meaning of statement set forth in Practice Book § 749 and General Statutes § 54-86b. *State* v. *Belle,* supra, 266. Our Supreme Court has recently determined that 911 emergency telephone calls are not statements that the state is required to disclose under our rules of practice. *State* v. *Cain,* supra. In the present case, as in *Cain,* a twenty-four hour tape, containing the statements requested by the defendant, was erased according to the routine procedure of the police department. This case, however, does not involve a 911 emergency telephone call. Instead, the tape requested by the defendant included recordings of Driscoll's call over the town radio, and Cronin's police radio broadcasts between approximately noon and the time of the defendant's arrest. The defendant asserted at oral argument that this fact distinguishes the present case from *State* v. *Cain,* supra.[7] The defendant's claims to the contrary notwithstanding, we conclude that our Supreme Court's opinion in *Cain* is dispositive of this appeal.

In *State* v. *Cain,* supra, our Supreme Court explained that Practice Book § 749 was not intended to encompass short emergency calls such as 911 emergency telephone calls. The court explained that the definition of statement found in our rules of practice was modeled after the definition set forth in the federal Jencks Act, 18 U.S.C. § 3500. *State* v. *Cain,* supra, 749. "The thrust of the definition of 'statement' under that act was to guard against the risk of quotation out of context from a 'lengthy oral recital.' *Palermo* v. *United States,* [360 U.S. 343, 78 S. Ct. 1217, 3 L. Ed. 2d 1287 (1959)]." *State* v. *Cain,* supra, 752–53. The rules of practice

---

[7] *State* v. *Cain,* 223 Conn. 731, 746–47, 613 A.2d 804 (1992), was issued after the briefs in this case were filed.

governing the disclosure to the defendant of statements made by the state's witnesses guard against the same risk.

The same rationale relating to tapes of 911 emergency telephone calls applies to the recordings of the broadcasts made by Driscoll and Cronin. As with the 911 calls in *Cain,* there is no evidence to suggest that the radio broadcasts in question in this case were the lengthy, thorough descriptions that Practice Book § 749 contemplates. See *State* v. *Cain,* supra, 753. Driscoll's call on the town radio was particularly similar to a 911 call because Driscoll was merely reporting a potentially dangerous driver to the police, the same way a person making a 911 emergency telephone call might. There is also no indication that Cronin's broadcasts during the time in question were lengthy and detailed descriptions of every circumstance Cronin observed.

Our Supreme Court recognized that a rule requiring the preservation of every twenty-four hour tape would impose a heavy burden on municipalities. The state was therefore not required to produce the twenty-four hour tape on which the 911 emergency telephone call was recorded. Id., 734. The burden of storing the recordings of the town radio and the police radio broadcasts would be as heavy as the burden for the storage and administration of tapes of the 911 emergency telephone calls because the same twenty-four hour tape records 911 calls, town radio broadcasts, and police broadcasts. The same intolerable financial and administrative burdens for the preservation of 911 tapes as those enumerated in *Cain* would pertain to the storage of the tapes at issue here. We are not persuaded that this case is distinguishable from *Cain.* For these reasons, we find that Driscoll's call over the town radio and Cronin's broadcast over the police radio were not statements that the state was required to disclose.

Because the broadcasts are not statements that the state is required to produce under our rules of practice, our decision on this issue is dispositive of this appeal. Therefore, we need not consider the defendant's claims involving harmlessness.

The judgment is affirmed.

In this opinion the other judges concurred.