STATE OF CONNECTICUT *v.* DAVID C. WITYAK
(14661)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and DUPONT, Js.

Argued June 2—decision released July 20, 1993

---

*Mary Miller Haselkamp,* assistant public defender, with whom, on the brief, was *Joan Andrews,* assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *Mary Galvin,* state's attorney, and *Nancy Dolinsky,* deputy assistant state's attorney, for the appellee (state).

*H. Maria Cone,* deputy corporation counsel, filed a brief for the city of Hartford as amicus curiae.

PER CURIAM. In *State* v. *Cain,* 223 Conn. 731, 613 A.2d 804 (1992), we held that the tape recording of a 911 emergency telephone call is not a "statement" within the meaning of Practice Book § 749 (2).[1] We granted certification to appeal in this case in order to determine whether our decision in *Cain* applies as well to radio communications to the police department and to police broadcasts that are recorded on the same twenty-four hour tapes that contain a town's 911 calls.[2] After full consideration, we conclude that the Appel-

---

[1] Practice Book § 749 provides: "—DEFINITION OF STATEMENT

"The term 'statement' as used in Sec. 748 means:

"(1) A written statement made by a person and signed or otherwise adopted or approved by him; or

"(2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

[2] The certified issue is: "Was the Appellate Court correct in expanding *State* v. *Cain,* 223 Conn. 731 [613 A.2d 804] (1992), to find that Deputy Fire Marshall Driscoll's call to the police station via his town radio, the dispatch call to Officer Cronin, and Officer Cronin's broadcasts were not statements under Practice Book § 749 (2)?" *State* v. *Wityak,* 224 Conn. 922, 618 A.2d 529 (1992).

late Court was correct in holding that *Cain* does apply to such communications and broadcasts; *State* v. *Wityak,* 29 Conn. App. 455, 464, 616 A.2d 276 (1992); and we affirm the judgment of the Appellate Court.

The facts and procedural history are stated in full in the opinion of the Appellate Court and need not be repeated in detail here. Stated briefly, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a).[3] Some of the evidence against him consisted of testimony by the Seymour deputy fire marshal Michael Driscoll and by Seymour police officer John Cronin. Driscoll had notified the police department, via his town radio, of information given to him by Francis Keith, a liquor store owner who observed the defendant's intoxicated condition. Keith had refused to sell beer to the defendant and had expressed his concern that the defendant might cause a motor vehicle accident. Id., 457–58. Cronin received the ensuing police dispatch from Driscoll, and thereafter located and ultimately arrested the defendant. By the time of trial, the town's twenty-four hour tape, which contained recordings of all 911 calls, nonemergency calls to the police department, police and other town departmental broadcasts, and fire and other

---

[3] General Statutes § 14-227a provides in part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is tenhundredths of one per cent or more of alcohol, by weight."

emergency calls, had been erased pursuant to the town's routine procedure. The trial court denied the defendant's motion to preclude the testimony of Driscoll and Cronin. Id., 459.

On appeal, the Appellate Court concluded that, although *Cain* had specifically addressed tapes of 911 calls, its reasoning controlled. Accordingly, that court held that the tape recordings of Driscoll's call to the police and the police broadcasts to and from Cronin, contained on the town's twenty-four hour tape, were not "statements" within the meaning of Practice Book § 749 (2). Id., 463–64. This appeal followed.

In this court, the defendant offers two bases for distinguishing *Cain:* (1) when the Advisory Committee to Revise the Criminal Rules of the Superior Court proposed § 749 in 1976, most of the larger municipal police departments in Connecticut were recording their internal communications, in contrast to 911 calls, which were not then in existence; and (2) that advisory committee consisted of representatives of the prosecution, as well as defense counsel and judges. The defendant urges, therefore, that, in adopting § 749, the judges of the Superior Court must have intended to include police broadcast tapes in the category of "statements." We are unpersuaded that these arguable differences are sufficient to undermine the other reasons we gave in *Cain* for excluding 911 calls from the definition of "statements" in Practice Book § 749 (2), which plainly do apply to the tapes involved in this case.[4]

---

[4] Indeed, we recognized in *Cain* that the same severe financial and administrative burdens that animated that decision would be inextricably linked to tapes like those in this case. "[S]ince all 911 calls come into one initial public safety answering point and include, not only requests for police services, but calls for fire, ambulance, medical and all other emergency services, and since conceivably any of those calls might be relevant to some subsequent criminal trial, all of those tapes would have to be preserved indefinitely as well." *State* v. *Cain,* 223 Conn. 731, 747, 613 A.2d 804 (1992). Furthermore, we were quite aware when we decided *Cain* that

The Appellate Court properly recognized that "[t]he same rationale relating to tapes of 911 emergency telephone calls applies to the recordings of the broadcasts made by Driscoll and Cronin." *State* v. *Wityak,* supra, 464. Because the Appellate Court's opinion properly analyzed the defendant's claim, it would serve no purpose to repeat the discussion therein contained.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., CALLAHAN, BORDEN and DUPONT, Js., concurred.

BERDON, J., dissenting. I am still of the opinion that tape recordings of 911 emergency telephone calls are "statements" within the clear and unambiguous language of General Statutes § 54-86b and Practice Book § 749. A "statement" is a "stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement." Practice Book § 749 (2); *State* v. *Cain,* 223 Conn. 731, 755 n.2, 613 A.2d 804 (1992) (*Berdon, J.,* dissenting). Consequently, I disagree with the majority's expansion of its holding in *Cain* to apply to radio communications to the police department and to police broadcasts.

Indeed, the argument for preserving police broadcasts and making them available for discovery is especially compelling because police broadcasts were commonly recorded when § 749 (2) was adopted in 1976. Thus, in this case, unlike *State* v. *Cain,* supra, 753, the Advisory Committee to Revise the Criminal Rules and the judges of the Superior Court clearly could have anticipated, if not expected, that the rule would

the advisory committee "consist[ed] of representatives of the prosecution, defense and judiciary." Id., 748.

be applied to police broadcast tapes.[1] Nevertheless, they failed to exclude police broadcasts from the detailed definition of the term "statement."

Accordingly, I respectfully dissent.

[1] In *State* v. *Cain,* 223 Conn. 731, 753, 613 A.2d 804 (1992), the majority of this court relied on the fact that "[Practice Book] § 749 (2) was adopted by the judges in 1976 and was, at that time, taken directly from the Jencks Act definition adopted by the Congress in 1957. The 911 designation for emergency telephone calls was not designated by [American Telephone and Telegraph Company] until 1968, however, and the telephonic system currently in place was not legislatively mandated until 1984 and not implemented, in accordance with that mandate, until 1989. This time sequence further convinces us that, when, in 1976, the advisory committee drafted and the judges adopted the language of § 749 (2), *they did not contemplate that it would be applied in 1992 to a complex telephonic system that did not exist in 1976* and that, by legislative mandate, inextricably links, not only local law enforcement agencies, but fire, ambulance, medical and other emergency services as well." (Emphasis added.)