## STATE OF CONNECTICUT *v.* ANTHONY MILNER
### (AC 15091)

Dupont, C. J., and Spear and Daly, Js.

Argued June 3—officially released August 5, 1997

*Kirstin B. Coffin,* special public defender, for the appellant (defendant).

*Ellen A. Jawitz,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Keith DuBoff,* assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, C. J. The defendant was charged with the crimes of burglary in the first degree in violation of General Statutes § 53a-101, interfering with an officer in violation of General Statutes § 53a-167a, assault of a peace officer in violation of General Statutes § 53a-167c, larceny in the fifth degree in violation of General Statutes § 53a-125a, and criminal mischief in the first degree in violation of General Statutes § 53a-115.

After a jury trial, the defendant was convicted of the crimes of burglary in the first degree, criminal mischief in the first degree and interfering with an officer, and

he was acquitted of the charges of larceny and assault of a peace officer.[1]

On appeal, the defendant claims that the trial court improperly rendered judgment on inconsistent verdicts and failed to provide the defendant with a "statement" of a prosecution witness after direct examination of that witness.

The jury reasonably could have found the facts that follow. On December 22, 1993, at approximately 1 a.m., Officer Richard Bowen, a patrolman with the Windsor Locks police department, was conducting a routine building check of a gas station in Windsor Locks. When Bowen pulled up to the building, he noticed two people inside, later identified as the defendant and Shelton Smith. The men were standing behind the cash register area, and one of them was loading cigarette cartons into the arms of the other. Believing that he had discovered a burglary in progress, Bowen called dispatch and requested backup units. At about this time, the two men became aware of Bowen's presence.

Bowen noticed that a window on one of the bay doors had been broken. It appeared that the defendant and Smith had entered the station through this broken window. Bowen then approached the station on foot, drew his weapon, and ordered the defendant and Smith to lie down on the ground. The defendant and Smith moved toward the rear of the station and momentarily disappeared from Bowen's sight. When they reappeared, Bowen again ordered them to lie down on the ground. The defendant and Smith then began throwing items from a display case and smashing the glass windows, in an attempt to escape from the building.

[1] The trial court sentenced the defendant to the following terms of imprisonment: fifteen years for burglary, one year for interfering with an officer, and five years for criminal mischief. The sentences imposed were concurrent, for a total effective sentence of fifteen years, suspended after ten years, followed by three years of probation.

At around this time, Officer Michael Bracken, the first backup officer, arrived on the scene. The defendant and Smith continued to smash windows, showering the officers and their cruisers with glass. Bowen repeated his order for the defendant and Smith to get down on the ground. At one point, Smith grabbed a two-by-four and smashed windows with it. Smith then attempted to come out of the window through which the men had entered the station. Bowen hit Smith with his nightstick, and Smith retreated into the station and unsuccessfully tried to kick down the front door. As Officer Daniel Squires arrived, Smith escaped from the building and fled. Squires pursued him.

Bowen pointed his weapon at the defendant, who remained in the building, and ordered him to lie on the ground. The defendant moved to the rear of the station and threw something at the window near Bowen. The window shattered, and glass fragments sprayed on Bowen's face. Bowen reholstered his weapon and brushed the glass off his face. At that moment, the defendant came through one of the smashed windows and lunged at Bowen. The defendant grabbed Bowen near his waist, in an attempt to grab Bowen's weapon. Bowen hit the defendant with his nightstick, and the two fell to the ground. The nightstick flew out of Bowen's hand. At that point, Bracken came to assist Bowen and they struggled with the defendant before they finally handcuffed him.

As a result of the struggle, Bowen sustained glass cuts on his hands and face, back pain from his fall to the ground, and a broken finger. Bracken received a cut inside his mouth and minor abrasions to his arms.

I

The defendant first claims that the trial court improperly rendered judgment on inconsistent verdicts. This

claim involves the conviction of the defendant on the charge of burglary in the first degree, and the acquittal of the defendant on the charge of assault of a peace officer. The defendant argues that the jury's verdicts should be overturned because they are contrary to logic. We disagree. The jury's verdicts are neither legally nor factually inconsistent.

### A

The jury's verdicts were not inconsistent as a matter of law. The issue of legal inconsistency typically arises when a defendant is convicted of two offenses that contain contradictory elements.[2] Such verdicts are legally inconsistent if "the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted." *State* v. *Hinton*, 227 Conn. 301, 313, 630 A.2d 593 (1993). In the present case, the defendant was convicted of one offense and acquitted of the other. Since we are not dealing with a situation in which the defendant is convicted of two offenses, and one conviction negates the other, the verdicts are not legally inconsistent in the usual sense.

In the present case, where the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is "necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration." *State* v. *Manning*, 162 Conn. 112, 123, 291 A.2d 750 (1971), quoting *State* v. *Keating*, 151 Conn. 592,

---

[2] Claims of legal inconsistency also arise when verdicts are based on a legal impossibility. An example of this would be the conviction of one defendant and the acquittal of the other in a joint trial of two alleged coconspirators. See *State* v. *Robinson*, 213 Conn. 243, 252–53, 567 A.2d 1173 (1989).

596, 200 A.2d 724 (1964), cert. denied sub nom. *Joseph* v. *Connecticut*, 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 (1965). If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other. See *State* v. *Manning*, supra, 123–24.

A person is guilty of the crime of burglary in the first degree when "he enters or remains unlawfully in a building with intent to commit a crime therein and . . . in the course of committing the offense, *he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone.*" (Emphasis added.) General Statutes § 53a-101 (a) (2). A person is guilty of the crime of assault of a peace officer when "*with intent* to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties . . . *he causes physical injury to such peace officer* . . . ." (Emphasis added.) General Statutes § 53a-167c (a) (1).[3] On their faces, these statutes are not identical. Subsection (a) (1) of the assault of a peace officer statute requires actual infliction of injury,[4] whereas first degree burglary can be committed by an attempt to inflict injury. Assault of a peace officer, § 53a-167c (a) (1), requires an intent to prevent an officer from performing his duties by causing injury to him; see *State* v. *Flynn*, 14 Conn. App. 10, 21, 539 A.2d 1005, cert. denied, 488

[3] The offense was committed on December 22, 1993. The section headings of the General Statutes were revised in 1995. The revision to § 53a-167c is not relevant here.

[4] Although the facts of the case indicate that the defendant could have been charged with violating either subsection (a) (1) or (a) (2) of General Statutes § 53a-167c, the short form information did not specify which subsection the defendant was charged with violating, and the defendant did not seek a bill of particulars. The case was apparently tried, however, as if the defendant was charged with violating only subsection (a) (1). The trial court instructed the jury only as to that subsection. Neither the assistant state's attorney nor defense counsel objected to the jury instructions.

U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988); whereas first degree burglary can be satisfied by recklessly causing injury. Assault of a peace officer applies to injuries only to "peace officers," whereas first degree burglary applies to injuries to "anyone." Since the two charges consist of different elements, a conviction of first degree burglary is not legally inconsistent with an acquittal of assault of a peace officer.

B

The relevant facts of this case also demonstrate that the verdicts were not factually inconsistent. The jury reasonably could have found that the defendant did not possess the specific intent to prevent Bowen from performing his duties by causing physical injury to him. Rather, the jury reasonably could have found that Bowen's injuries were the result of the defendant's reckless conduct as he attempted to flee the scene of the burglary. In the alternative, the jury could have found that the defendant attempted to injure Bowen, but did not actually injure him.

Even if the verdicts were factually inconsistent, the defendant cannot prevail on this claim. A jury verdict may not be overturned on the ground that a conviction on one count is factually inconsistent with an acquittal on another count. See *United States* v. *Powell*, 469 U.S. 57, 69, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984); *Dunn* v. *United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932). Our Supreme Court has also adopted this rule. See *State* v. *Martin*, 189 Conn. 1, 6, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983); *State* v. *Rosado*, 178 Conn. 704, 708–709, 425 A.2d 108 (1979).

The rationale behind this rule is that "where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not

speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' " *United States* v. *Powell*, supra, 469 U.S. 64–65, quoting *Dunn* v. *United States*, supra, 284 U.S. 393. It is possible that the jury arrived at inconsistent verdicts through mistake, compromise, or lenity. However, " 'verdicts cannot be upset by speculation or inquiry into such matters.' " *State* v. *Stevens*, 178 Conn. 649, 653, 425 A.2d 104 (1979), quoting *Dunn* v. *United States*, supra, 394. Indeed, "[i]t was the jury's prerogative to act as they did and it is essential to the preservation of the right to a trial by jury that their conclusions be respected." *State* v. *Stevens*, supra, 656. Moreover, the " 'fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review [of the acquittal], suggests that inconsistent verdicts should not be reviewable.' " *State* v. *Flynn*, supra, 14 Conn. App. 25, quoting *United States* v. *Powell*, supra, 66.

The defendant states in one sentence in his brief that inconsistent verdicts deprive defendants of their rights under the fifth, sixth, and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution. He does not expand on this statement or make any argument in support of it. In any case, a claim that factually inconsistent verdicts must be set aside is not one of constitutional dimension. See *United States* v. *Powell*, supra, 469 U.S. 65; *State* v. *Gaston*, 198 Conn. 490, 492, 503 A.2d 1157 (1986); *State* v. *Pieger*, 42 Conn. App. 460, 466, 680 A.2d 1001, (1996), aff'd, 240 Conn. 639, 692 A.2d 1273 (1997). Thus, the defendant's contention that his constitutional rights were violated by inconsistent verdicts is without merit.

## II

The defendant's second claim is that the trial court should have provided him with the alleged "statement" of a prosecution witness. The defendant claims that the

trial court's failure to do so violated his rights under General Statutes § 54-86b[5] and Practice Book §§ 752[6] and 755,[7] as well as his constitutional right of confrontation.

The following additional facts are relevant to this issue. At the defendant's trial, Bowen was the state's first witness. Following direct examination, defense counsel moved for production of any of Bowen's statements. The state produced Bowen's police report and the face sheet of the report, also prepared by Bowen. Bowen's police report had been typed for him by Detective Rick Rachele because Bowen had injured his hand during his struggle with the defendant. The police report was signed by Bowen. On a motion by defense counsel, the court ordered the state's attorney to check the case

[5] General Statutes § 54-86b provides: "(a) In any criminal prosecution, after a witness called by the prosecution has testified on direct examination, the court shall on motion of the defendant order the prosecution to produce any statement oral or written of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified, and the court shall order said statement to be delivered directly to the defendant for his examination and use.

"(b) If the prosecution fails to comply with the order of the court, the court shall strike from the record the testimony of the witness and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared."

[6] Practice Book § 752 was repealed effective October 1, 1995. Practice Book § 743 superseded § 752. Practice Book § 752 provided: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

[7] Practice Book § 755 was repealed effective October 1, 1995. Practice Book § 735A superseded § 755. Practice Book § 755 provided: "If the prosecuting authority elects not to comply with an order of the judicial authority to deliver to the defendant any statement of a witness who has testified or such portion thereof as the judicial authority may direct, the judicial authority shall strike from the record the testimony of the witness, and the trial shall proceed unless the judicial authority, in his discretion, upon motion of the defendant, determines that the interests of justice require that a mistrial be declared."

file for any other reports signed by Bowen. No such
reports were found.

Following defense counsel's cross-examination of
Bowen, the state called Michael Petraska, the general
manager of the gas station. The defendant moved for
production of Petraska's statement to police regarding
damage to the station. In response, the state produced
the report of Rachele, which was signed only by
Rachele. Upon review of Rachele's report, defense
counsel stated that he believed it was a substantially
verbatim recording of what Bowen told Rachele
because it was very similar to Bowen's testimony.
Therefore, defense counsel argued, Rachele's report
was a statement of Bowen and, as such, should have
been produced after Bowen's direct testimony. Defense
counsel moved the trial court to make a ruling as to
whether Rachele's report was a statement of Bowen.

Rachele was called to the stand to testify, outside
the presence of the jury. He testified that his report
was not a verbatim recording of a statement by Bowen.
Rather, he testified that his report was a summary of
what Bowen and other officers at the scene had told
him. The trial court ruled that Rachele's report did not
amount to Bowen's statement as defined in Practice
Book § 749.[8] The defendant claims that the trial court
improperly ruled that Rachele's report did not consti-
tute Bowen's statement as defined in Practice Book
§ 749. We disagree.

The trial court has broad discretion in determining
what constitutes a statement that must be disclosed,

[8] At the time of trial, Practice Book § 749 defined the term "statement"
as: "(1) A written statement made by a person and signed or otherwise
adopted or approved by him; or

"(2) A stenographic, mechanical, electrical, or other recording, or a tran-
scription thereof, which is a substantially verbatim recital of an oral state-
ment made by a person and recorded contemporaneously with the making
of such oral statement."

and its findings will be disturbed only if they are clearly erroneous. See *State* v. *Wityak*, 29 Conn. App. 455, 462, 616 A.2d 276 (1992), aff'd, 226 Conn. 470, 627 A.2d 1341 (1993); *State* v. *Black*, 23 Conn. App. 241, 244, 579 A.2d 1107, cert. denied, 216 Conn. 827, 582 A.2d 204 (1990).

"Practice Book § 749 limits the disclosures governed by §§ 748 through 755 to two categories of materials: '(1) A written statement made by a person and signed or otherwise adopted or approved by him; or (2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement.' " *State* v. *Myers*, 193 Conn. 457, 470, 479 A.2d 199 (1984). The trial court's finding that Rachele's report did not fall into either of these two categories was not improper.

It is clear from the record that Bowen signed his own report, but not Rachele's report. Moreover, Rachele testified that his report was the result of his investigation of the incident, including a summary of what Bowen and other officers at the scene had told him. In fact, Rachele's report indicates that Bracken was the first officer with whom he spoke. Rachele also testified that his report was not a transcription or verbatim account of a statement given by Bowen. Rachele signed his report as investigating officer. Accordingly, we conclude that the trial court properly found that Rachele's report did not amount to a statement by Bowen, and disclosure of it was not required by § 54-86b and Practice Book §§ 752 and 755.

Even if Rachele's report was a statement of Bowen, the trial court's failure to provide the defendant with it after Bowen's direct testimony did not violate the defendant's right of confrontation. The defendant failed to raise this claim at trial. "[A] defendant can prevail

on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "In the absence of any one of these conditions, the defendant's claim will fail." Id., 240.

With regard to the first prong of the *Golding* test, it is undisputed that the record is adequate to review the alleged claim of error. As to the second prong, the defendant has presented a claim of constitutional magnitude. In general, "[t]he right under the rules of practice to statements of witnesses after direct examination is not a right of constitutional magnitude"; *State* v. *Coriano*, 12 Conn. App. 196, 200, 530 A.2d 197, cert. denied, 205 Conn. 810, 532 A.2d 77 (1987); but, under certain circumstances, the state's failure to produce material to which the defendant is entitled under § 54-86b and Practice Book § 752 may " 'adversely affect a defendant's ability to cross-examine . . . witnesses and thereby infringe upon his constitutional right of confrontation.' " *State* v. *Reddick*, 36 Conn. App. 774, 781, 654 A.2d 761, cert. denied, 232 Conn. 922, 656 A.2d 671 (1995), quoting *State* v. *Williamson*, 212 Conn. 6, 20, 562 A.2d 470 (1989). Thus, the defendant's claim is one of constitutional magnitude.

The defendant fails, however, to establish the third prong of the *Golding* test. The defendant fails to demonstrate that his constitutional right of confrontation was, in fact, violated and that the alleged violation deprived

him of a fair trial. In determining whether cross-examination has been impaired so as to violate the defendant's right of confrontation, our Supreme Court has considered such factors as the trial or reviewing court's access to the unproduced material, whether the defendant's conviction rested on the testimony of the witness whose statement was not produced, and whether other impeachment material was available to the defendant. *State* v. *Williamson*, supra, 212 Conn. 21–23; *State* v. *Reddick*, supra, 36 Conn. App. 781; *State* v. *Wager*, 32 Conn. App. 417, 424, 629 A.2d 1146, cert. denied, 228 Conn. 912, 635 A.2d 1231 (1993).[9]

In the present case, both the trial court and this court had access to Rachele's report. In addition, while Bowen's testimony was important in implicating the defendant in the burglary, the defendant's conviction did not rest solely on this testimony. Bracken also testified at trial regarding the defendant's involvement in the incident at the gas station, including his presence in the building, his smashing of the glass windows, and his struggle with both officers prior to being handcuffed.

Furthermore, other impeachment material was available to the defendant. The defendant had access to Bowen's police report and face sheet. Defense counsel also had the opportunity to review Rachele's report at trial. Although he had already cross-examined Bowen when the report was produced, he could have called Bowen as a defense witness if he found any impeachment material in the report. Thus, based on all three relevant factors, the defendant's right of confrontation was not violated by the trial court's failure to provide Rachele's report to the defendant after Bowen's direct

---

[9] Another factor to be considered is whether the witness has adopted a counterpart transcript within a short time after making the statement. See *State* v. *Reddick*, supra, 36 Conn. App. 781. This factor, however, is not applicable to the present case because we are not faced with a situation in which the witness' tape-recorded statement has been destroyed.

testimony. Accordingly, the defendant cannot prevail on his unpreserved claim.

The judgment is affirmed.

In this opinion the other judges concurred.