### STATE OF CONNECTICUT *v.* KEVIN SOTO
### (AC 19308)

Foti, Mihalakos and Pellegrino, Js.

---

[10] This appeal raised essentially the same issue of "unclean hands" that the defendant now attempts to revive.

Submitted on briefs June 5—officially released August 22, 2000

*Louis S. Avitabile*, special public defender, filed a brief for the appellant (defendant).

*John A. Connelly*, state's attorney, and *Christopher T. Godialis* and *Robin Lipsky*, assistant state's attorneys, filed a brief for the appellee (state).

*Opinion*

FOTI, J. The defendant, Kevin Soto, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1]

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecu-

On appeal, the defendant claims that the trial court improperly (1) denied his motion in arrest of judgment in which he had claimed that the verdict[2] was legally inconsistent as a matter of law and (2) excluded evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 22, 1996, officers from the Waterbury police department were dispatched to 49 Ridgewood Street where they discovered the body of the victim, Hector Nieves, who had been stabbed and cut approximately 125 times. They had been directed to the scene by a 911 emergency telephone call made by a male caller who had identified himself only as "Michael." On the following day, the defendant, a friend of the victim, was interviewed, and he denied any knowledge of the murder. On the next day, after listening to the 911 tape, the defendant admitted that he had made the call and that the voice on the tape was his. After being advised of his *Miranda*[3] rights and having waived those rights, the defendant named Jose Colon as the person who had committed the murder. The defendant did not admit that he was present or that he had participated in the murder.

Following Colon's questioning by the police, the police again spoke to the defendant and he admitted at that time that he had been present and had been involved in the murder. Thereafter, the defendant gave a signed written statement wherein he described how he and Colon had planned only to scare the victim because the victim had disrespected both of them in public. He indicated that he had given his buck knife

tion for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] The defendant was found not guilty of a second count charging him with the crime of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a).

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

to Colon, who, after waving it around, gave it back to him. The defendant then cut Nieves on the side of the neck. At trial, the defendant testified that they had been smoking marijuana and had cut the victim on the neck, but that Colon had pulled out a big knife, which was an antique Pakistani sword, and began stabbing Nieves, at which time the defendant left. The defendant then went to the house of his girlfriend, Edith Santos, and told her that Colon had just killed Nieves.

## I

The defendant first claims that the court should have granted his postverdict motion in arrest of judgment.[4] He argues that while not inconsistent as a matter of fact, the verdict is inconsistent as a matter of law because it was based on a legal impossibility, that is, two people cannot aid and abet one another to commit murder[5] without the two first having made at least an implied agreement to commit the crime. Therefore, one cannot be guilty of aiding and abetting murder without first having committed the crime of conspiracy to commit murder.

"It is axiomatic that a jury verdict may not be overturned on the ground that a conviction on one count is factually inconsistent with an acquittal on another count." *State* v. *Jacques*, 53 Conn. App. 507, 523–24, 733 A.2d 242 (1999). "Consistency in the verdict is not necessary." (Internal quotation marks omitted.) *State* v. *Martin*, 189 Conn. 1, 6, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983).

---

[4] The defendant also filed two other postverdict motions that are not part of this appeal, namely, a motion for a new trial and a motion for judgment of acquittal.

[5] The defendant was charged in a substitute information with murder in violation of General Statutes § 53a-54a (a) and conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a). Subsequently, in a bill of particulars the state alleged that the defendant was an accessory to murder in that he had aided in causing the death of the victim and that he had conspired with another to commit murder.

We do not agree with the defendant that the jury's verdict was inconsistent as a matter of law and based on a legal impossibility. "The issue of legal inconsistency typically arises when a defendant is convicted of two offenses that contain contradictory elements. Such verdicts are legally inconsistent if the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted. *State* v. *Hinton*, 227 Conn. 301, 313, 630 A.2d 593 (1993). . . . [T]he defendant was convicted of one offense and acquitted of the other. [Because the court is] not dealing with a situation in which the defendant is convicted of two offenses, and one conviction negates the other, the verdicts are not legally inconsistent in the usual sense. . . .

"Where the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration. *State* v. *Manning*, [162 Conn. 112, 123, 291 A.2d 750 (1971)], quoting *State* v. *Keating,* 151 Conn. 592, 596, 200 A.2d 724 (1964), cert. denied sub nom. *Joseph* v. *Connecticut*, 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 (1965). If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other. See *State* v. *Manning*, supra, 123–24. *State* v. *Milner*, 46 Conn. App. 118, 122–23, 699 A.2d 1022 (1997)." (Internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 244–45, 745 A.2d 800 (2000). A conviction of the defendant for conspiracy requires proof of an agreement, whereas to convict him as an accessory to murder proof of such an agreement is not necessary. Section 53a-48 (a), the statute governing conspiracy liability, and General Statutes

§§ 53a-8 and 53a-54a (a), which govern liability for murder as an accessory, contain different elements, and consequently a conviction of one crime is not inconsistent on its face with an acquittal of the other. See *State* v. *DeCaro*, supra, 252 Conn. 245. Accordingly, the defendant's claim must fail.

## II

The defendant next alleges that the court improperly excluded from evidence statements of Colon that showed Colon's intentions, motivations and state of mind during the murder and that constituted statements made against Colon's penal interest.

During the trial, the defendant attempted to have three witnesses testify that Colon had told them that he had murdered Nieves because he had been told by his parents that Nieves had disrespected his family and had touched his sister inappropriately during a party at his house. The court did not allow the proffered testimony because it was irrelevant and inadmissible hearsay. We agree that the evidence the defendant sought to have presented before the jury was both irrelevant and inadmissible as hearsay.

"It is well established that a 'trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion.' " *Sivilla* v. *Philips Medical Systems of North America, Inc.*, 46 Conn. App. 699, 706, 700 A.2d 1179 (1997). "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996). "Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." *State* v. *Barnes*, 232 Conn. 740, 746–47, 657 A.2d 611 (1995).

The defendant was charged with aiding and abetting Colon in murdering Nieves. The factual issues relevant to such a charge were whether Colon killed Nieves, whether the defendant intended to aid Colon in murdering Nieves and whether the defendant intended to murder Nieves. The reason why Colon killed Nieves and what Colon's state of mind was during or after the murder were not relevant to the defendant's case. What Colon may have said about his own motive or state of mind was irrelevant as to whether the defendant had aided in the commission of the murder.

The defendant concedes that the excluded evidence is hearsay, but claims that it was admissible under either the "state of mind" or the "statement against penal interest" exception to the hearsay rule. We do not agree. Because Colon's state of mind was not a relevant factual issue in the defendant's case, the "state of mind" exception; Conn. Code Evid. § 8-3 (4); does not apply. See *State* v. *Cato*, 21 Conn. App. 403, 408, 574 A.2d 240, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990) ("[a]n out-of-court statement made after the completion of a criminal act is not admissible under the state of mind exception as to the intent or motive underlying that completed act").[6] Further, the statements involve "double" hearsay, or hearsay within hearsay, that is, Colon's statements to the witnesses constituted the first layer of hearsay, and what he had told the witnesses that his parents had said to him was the second layer of hearsay. As such, the statements do not qualify under the exception even if they were against his penal interest and in some way relevant in this case.[7] See Conn. Code Evid. § 8-7; see also *State* v. *Lewis*, 245 Conn. 779, 802, 717

[6] Moreover, the defendant does not argue that the statements made by Colon's parents to Colon were offered not for the truth of what was said, but rather to show why Colon acted as he did, and thus were admissible as nonhearsay.

[7] The record indicates that Colon had already been convicted of murder at the time of the defendant's trial.

A.2d 1140 (1998) ("[w]hen a statement is offered that contains hearsay within hearsay, each level of hearsay must itself be supported by an exception to the hearsay rule in order for that level of hearsay to be admissible").

The judgment is affirmed.

In this opinion the other judges concurred.