## STATE OF CONNECTICUT *v.* JAMES BRILEY
## (AC 17529)

Foti, Schaller and Daly, Js.

Argued May 27—officially released October 12, 1999

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Robert C. Brunetti*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, James Briley, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General

Statutes §§ 53a-134 (a) (4)[1] and 53a-133.[2] The defendant claims that the state committed prosecutorial misconduct in dramatizing a witness' memory in rebuttal argument to the jury. We disagree and affirm the trial court's judgment.

The jury reasonably could have found the following facts. On August 9, 1996, at about 9:15 a.m., the defendant, a black male, was standing in a teller's line in the Plumbtree Plaza branch of People's Bank in Danbury. Melissa Ballas, a customer, was behind the defendant. The defendant was wearing a long-sleeved red shirt, camouflage pants, a black cap and dark sneakers with distinctive green stitching and a circular lacing pattern. A beige grocery bag protruded from his pocket. When he approached the teller, Jennifer Pelletier, he indicated that he had a gun and demanded money in $100 and $50 denominations. Pelletier had the impression that there was a gun in the bag and handed $4050 in $100 bills and $50 bills to the defendant. The defendant left the bank at about 9:20 a.m. with the money in his left hand. The Danbury police and the Federal Bureau of Investigation (FBI) were notified.

Detectives Daniel Trompetta and James Terry of the Danbury police department were dispatched to the

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol [or] revolver . . . ."

[2] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

scene and, while en route, traversed the Woodside Avenue and Eden Drive area where they spotted the defendant. They stopped him, patted him down and then released him since the defendant's clothing did not match the description of the robber. At the bank, the detectives viewed the bank monitor video and recognized the defendant as the perpetrator.

The detectives, along with FBI Special Agent John Mahaney, checked the area behind the bank and followed a path where they found a pile of clothing. The pile included a long-sleeved red shirt and green camouflage pants. A fresh sneaker print was discovered nearby. With the help of a trained canine, the scent was followed to an area near the Eden Street housing project where the defendant had been stopped. The officers went to the defendant's home and asked him to accompany them to the police station where they arrived at about noon. At the station, the defendant was asked if he owned a red shirt. He replied: "Those weren't my clothes on the trail."

Also at the police station, Pelletier selected the defendant's photograph from an array of eight photographs. Another teller, Yolanda Lopez, selected the defendant's photograph along with another from an array of ten photographs. The defendant was arrested at 2:30 p.m. At about 4 p.m., a search warrant was issued for the defendant's home. The search resulted in the seizure of sunglasses, a watch and sneakers, which were identified by Ballas as those worn by the robber. The sneaker print matched that of the sneaker print on the path behind the bank.

On appeal, the defendant challenges the prosecutor's rebuttal argument responding to the defendant's attack on the reliability of Pelletier's identification of the defendant, which was based on her having seen him in the bank for about thirty seconds. The prosecutor told

the jury: "I submit to you, if someone says to you, 'I have a gun, I'm going to shoot you,' that impression of that person is ingrained in your mind. It's burned in your memory." The prosecutor then drew examples referring to the attack on Pearl Harbor, the destruction of the Challenger space shuttle over Cape Canaveral and the assassination of President John F. Kennedy. The defendant failed to object at that time and now claims that the prosecutor committed misconduct because he was, in essence, giving expert testimony about eyewitness memory that was contrary to cognitive psychology. The defendant claims it is reviewable as plain error or under this court's general supervisory powers.

"Both this court and our Supreme Court have held that where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. . . . Where counsel fails to object or to request a curative charge we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized." (Citations omitted; internal quotation marks omitted.) *State* v. *Eason*, 47 Conn. App. 117, 121, 703 A.2d 130 (1997), cert. denied, 243 Conn. 962, 705 A.2d 552 (1998).

"We have long held, moreover, that . . . review of such a claim [under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989)] is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . because in such a case the claimed misconduct is insufficient to infect the fundamental fairness of the trial itself. . . . Furthermore, in order to warrant review under the plain error doctrine, the allegedly improper

conduct must so pervade the defendant's trial as to have impaired the effectiveness or integrity of the judicial process." (Citations omitted; internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 769, 670 A.2d 276 (1996).

"We have previously acknowledged that prosecutorial misconduct can occur in the course of closing argument. . . . Furthermore, it is improper for a prosecutor to express his or her own opinion, either directly or indirectly, as to the credibility of witnesses. . . . It is well settled, however, that a defendant may not prevail under *Golding* or the plain error doctrine unless the prosecutorial impropriety was so pervasive or egregious as to constitute an infringement of the defendant's right to a fair trial, nor will we invoke our supervisory authority to reverse an otherwise lawful criminal conviction absent a showing that the conduct of the prosecutor was so offensive to the judicial process that a new trial is necessary to deter such misconduct in the future. . . . Finally, we must review the challenged comments in the context of the entire trial, with due regard to the extent to which the objectionable remarks were invited by defense conduct or argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 564–65, 710 A.2d 1348 (1998).

"In determining whether this claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 355, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). "[B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument."

(Internal quotation marks omitted.) Id., 358. In reviewing claims of prosecutorial misconduct, "we have focused on several factors, [including] . . . the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) Id., 355–56.

It is apparent that the remarks of the state's attorney were invited by the comments of defense counsel in challenging the reliability of Pelletier's identification of the defendant, which was based on the short period of time in which she saw him in the bank. "When a prosecutor's allegedly improper argument is in direct response to matters raised by defense counsel, the defendant has no grounds for complaint." *State* v. *Delosantos*, 13 Conn. App. 386, 392, 536 A.2d 609 (1988). Furthermore, the statements were made only on one occasion during closing argument. See *State* v. *Owen*, 40 Conn. App. 132, 141, 669 A.2d 606, cert. denied, 236 Conn. 912, 673 A.2d 114, cert. denied, 237 Conn. 922, 676 A.2d 1376 (1996). Finally, the case against the defendant was sufficiently strong (videotape identification, footprint, patron identification, clothing found in proximity to bank) such that the jury in all probability would have found him guilty absent the allegedly improper remarks. See *State* v. *Flinter*, 16 Conn. App. 402, 410, 548 A.2d 1, cert. denied, 209 Conn. 829, 552 A.2d 1216 (1988). "[T]he burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 356. The defendant has failed to meet this burden.

"An appellate court has a certain inherent supervisory authority over the administration of justice . . . in the trial courts below that permits action to deter prosecutorial misconduct which is unduly offensive to the maintenance of a sound judicial process. . . . [Our Supreme Court], however, has long been of the view that it is ultimately responsible for the enforcement of court rules in prosecutorial misconduct cases." (Citations omitted; internal quotation marks omitted.) *State* v. *Ubaldi*, 190 Conn. 559, 570–71, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). While, by affirming, we do not approve of the prosecutor's comments, this case does not involve deliberate prosecutorial disregard of express judicial directions or established rules of fair play. Thus, there is no occasion for the exercise of our supervisory powers. See *State* v. *Fullwood*, 194 Conn. 573, 584–85, 484 A.2d 435 (1984). Given the lack of deliberate prosecutorial misconduct or otherwise egregious or unduly offensive behavior, we also decline to exercise our supervisory powers over the administration of justice to order a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.