STATE OF CONNECTICUT *v.*
CHRISTOPHER WEINER
(AC 18871)

Lavery, C. J., and Dranginis and Daly, Js.

Argued December 1, 2000—officially released February 13, 2001

*William R. Moller*, with whom were *Jerome J. Larracuente*, and, on the brief, *Frederick D. Paoletti, Jr.*, for the appellant (defendant).

*Richard F. Jacobson*, special assistant state's attorney, with whom, on the brief, was *Stephen J. Sedensky III*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Christopher Weiner, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the third degree in

violation of General Statutes § 53a-72a (a) (1) (A),[1] unlawful restraint in the second degree in violation of General Statutes § 53a-96 (a)[2] and risk of injury to a child in violation of General Statutes § 53-21 (2).[3] On appeal, the defendant claims that the trial court improperly failed to grant his (1) motion for judgment of acquittal notwithstanding the verdict with respect to the charge of risk of injury to a child, (2) motion to dismiss the charge of risk of injury to a child on the basis that the statute is unconstitutionally vague as applied to him and is, therefore, in violation of the constitutions of Connecticut and the United States, and (3) petition for a new trial. The defendant further claims that he was deprived of a fair hearing on the petition for a new trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In February, 1997, the victim was fourteen years old and a freshman in high school. On the evening of February 7, 1997, she attended a party with her friends at a club where she was introduced to the defendant for the first time.

The victim and the defendant talked and danced together. As they continued to dance, they began kissing, and the defendant moved them further onto the dance floor. The defendant then tried to get the victim to go into the men's rest room with him and coerced

---

[1] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person . . . ."

[2] General Statutes § 53a-96 (a) provides: "A person is guilty of unlawful restraint in the second degree when he restrains another person."

[3] General Statutes § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

her into a small, dark storage room. At first, the victim and the defendant continued kissing, but as things progressed, the victim protested.

The defendant unbuttoned her pants and, because they were loose, her pants fell to the floor. When she bent over to pull them back up, he forced her head and shoulders down. When she was allowed to stand up, the defendant picked her up and sat her on a desk. The victim's pants were at her knees. The defendant continued to kiss her as she was telling him to stop. He then forcibly penetrated her vagina. She told him to stop and pushed him off her. She started to head for the door, but the defendant stood in front of her and attempted to penetrate her vagina again. This time, she slid down the wall crying. While she was on the floor, the defendant took her hand and forced her to masturbate him. Afterward, he said he would be right back and left the room. The victim gathered her things and left the room, still crying.

As the victim left, she swore at the boy who had introduced her to the defendant. She then saw a friend who had accompanied her to the club. They went to the women's rest room where the victim continued crying and related what had happened. She then drank some beer and liquor, became intoxicated and subsequently went home.

The following Tuesday at school the victim was involved in a fight with a friend of the defendant's girlfriend when the girl called the victim a "slut" and punched the victim in the face. The school notified the victim's mother, and, while the victim and her mother were in the vice principal's office, the victim related the incident that had taken place at the club the preceding Friday and stated that the fight had started because the other girl thought that the victim was fooling around with the defendant.

The victim and her mother then went to Saint Vincent's Hospital where the victim was physically examined and spoke with a police officer. She later gave the police a letter written by the defendant in which he apologized for the grief he had caused and pleaded with her family not to press charges.[4]

Criminal charges followed. Count one of the state's amended substitute information charged the defendant with sexual assault in the first degree by compelling another person to engage in vaginal intercourse by the use of force in violation of General Statutes § 53a-70 (a) (1)[5]; count two charged the defendant with sexual assault in the third degree by compelling another person to submit to sexual contact, namely, masturbation, by the use of force; count three charged the defendant with unlawful restraint in the second degree; and count four charged the defendant with risk of injury to a child by subjecting a child under sixteen years of age to contact with his intimate parts, namely, his penis.

At trial, several witnesses, including the victim and the defendant, testified as to the events in question. On

[4] The letter provided: "I am writing this letter to apologize for any grief I have caused your family. I would like to tell you this in person, but in respect to your family I did not think you wanted to see me, so I am writing this letter. From my knowledge you are thinking of taking legal actions against me. I would like you to know how sorry I am and I know how serious this is. I would like you to know that if I am convicted of the charges you plan to [charge] me with . . . I may spend time in jail be kicked off the football and wrestling teams. I also plan on going to college and if convicted I do not think I will be able to. [Therefore] I would like you to reconsider pressing charges, because I am very sorry and don't want to pay for the mistakes I make now for the rest of my life.
"My Deepest Regrets
"Chris Weiner"

[5] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

July 13, 1998, the jury returned a guilty verdict on counts two, three and four. The jury found the defendant not guilty on count one. On August 28, 1998, the court sentenced the defendant to a total effective sentence of six years imprisonment, execution suspended after three years, with ten years probation with the conditions that the defendant have no contact with the victim and attend sex offender treatment. This appeal followed.

I

The defendant first claims that the court improperly failed to grant his motion for judgment of acquittal notwithstanding the verdict with respect to count four, the charge of risk of injury to a child. The defendant argues that, in light of the testimony and evidence presented and the facts and circumstances of the case, it is legally and logically inconsistent for the jury to have found the defendant not guilty of sexual assault in the first degree, but guilty on the charge of risk of injury to a child, and, therefore, the court improperly denied his motion for judgment of acquittal notwithstanding the verdict. We reject this claim.

We must first consider the nature of directed verdicts and our standard of review. "Our Supreme Court has repeatedly stated that directed verdicts are not favored. . . . Nevertheless, the trial court has the power to set aside a jury verdict that, in its opinion, is contrary to either the law or the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion. . . . The verdict should not be set aside and judgment directed if the jury could reasonably and legally have reached its conclusion." (Internal quotation marks omitted.) *Kurti* v. *Becker*, 54 Conn. App. 335, 337, 733 A.2d 916, cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999).

"When we are requested to determine whether the jury could not legally have reached its decision, we must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . [O]ur sole responsibility is to decide whether, on the evidence presented, the jury could fairly have reached the conclusion it did. . . . While the trial judge has discretion in deciding whether to grant such a motion, the decision will be overturned if it constitutes an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Outlaw* v. *Meriden*, 43 Conn. App. 387, 391, 682 A.2d 1112, cert. denied, 239 Conn. 946, 686 A.2d 122 (1996).

## A

The defendant contends that the court abused its discretion in not granting his motion for judgment of acquittal because the jury's finding of not guilty of sexual assault in the first degree is legally inconsistent with a finding of guilty on the charge of risk of injury to a child because it indicates that the state failed to establish that the defendant subjected the victim to contact with the intimate parts of his person in a sexual and indecent manner as required by § 53-21 (2). We disagree and conclude that the verdict is not inconsistent as a matter of law.

"[W]here the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration. . . . If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." (Citations omitted;

internal quotation marks omitted.) *State* v. *Milner*, 46 Conn. App. 118, 122–23, 699 A.2d 1022 (1997).

The two statutes at issue in this case clearly contain different elements. The risk of injury statute requires that the state show that the defendant subjected a child under sixteen years of age to contact with the intimate parts of his person in a sexual and indecent manner likely to impair the health or morals of the child. The fourth count of the state's information alleged that the defendant subjected "a child under sixteen years of age to contact with his intimate parts, to wit: his penis." The sexual assault statute, by contrast, requires a showing that the defendant compelled another to engage in sexual intercourse by the use of force or threat of force. With respect to this charge, the state alleged vaginal intercourse. Because the necessary elements of the two statutes are distinct, we conclude that the defendant's claim that the jury's conclusion was legally incorrect is entirely without merit.

## B

Notwithstanding our well settled rule that a factually inconsistent verdict will not be overturned on appeal; *State* v. *DeCaro*, 252 Conn. 229, 243, 745 A.2d 800 (2000) (inconsistency in verdict not objectionable in itself); *State* v. *Martin*, 189 Conn. 1, 6–7, 454 A.2d 256 (trial court improperly relied on inconsistency as ground for setting aside conviction on risk of injury charge where defendant acquitted on related assault charge), cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983); *State* v. *Morgan*, 179 Conn. 617, 620 & n.2, 427 A.2d 429 (1980) (acquittal on assault charge did not require acquittal on less serious charge of reckless endangerment); the defendant further urges this court to reverse the trial court's judgment of conviction on the charge of risk of injury to a child on the ground that the acquittal on the sexual assault charge is factually

inconsistent with the conviction on the risk of injury charge.

The defendant's claim of factual inconsistency appears to be based on his theory that the jury could not reasonably believe the victim's testimony that the defendant forced her to masturbate him and simultaneously disbelieve her testimony that he forced her to have sexual intercourse with him. We are not persuaded.

"The law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise. . . . [I]nconsistency of the verdicts is immaterial. . . . As Justice Holmes long ago observed in the case of *Dunn* v. *United States*, 284 U.S. 390, 393–94, 52 S. Ct. 189, 76 L. Ed. 356 (1932): The most that can be said in such cases [i.e., of inconsistent verdicts] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity. . . . That the verdict may have been the result of compromise, or a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (Internal quotation marks omitted.) *State* v. *DeCaro*, supra, 252 Conn. 242–43. "Indeed, [i]t was the jury's prerogative to act as they did and it is essential to the preservation of the right to a trial by jury that their conclusions be respected. . . . Moreover, the fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review [of the acquittal], suggests that inconsistent verdicts should not be reviewable." (Citation omitted; internal quotation marks omitted.) *State* v. *Milner*, supra, 46 Conn. App. 125. "While an inconsistent verdict is not objectionable in itself, its inconsistency may be considered

insofar as it supports a claim that the jury's conclusion was not reasonably and logically reached." *State* v. *Manning*, 162 Conn. 112, 123, 291 A.2d 750 (1971).

We are not persuaded that the acquittal on the charge of sexual assault in the first degree supports a claim that the jury's conclusion that the defendant was guilty of the charge of risk of injury is not reasonably and logically reached. The jury reasonably could have found that, although sexual intercourse did not occur or was not forced, the defendant forced the victim to have contact with his intimate parts, namely, his penis, by forcing the victim to masturbate him.

## II

The defendant next claims that the court improperly failed to grant his motion to dismiss count four charging him with risk of injury to a child in violation of § 53-21 (2) because the statute is vague as applied to him and, therefore, violates the constitutions of the United States and Connecticut. We disagree.

We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. "Our standard of review of a trial court's findings of fact and conclusions of law in connection with a motion to dismiss is well settled. A finding of fact will not be disturbed unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Citations omitted; internal quotation marks omitted.) *State* v. *Wiggs*, 60 Conn. App. 551, 553–54, 760 A.2d 148 (2000).

"As a general rule, when a statute is attacked as void for vagueness, its validity is determined by its

application to the particular facts at issue. . . . In challenging the constitutionality of a statute, the defendant bears the heavy burden of establishing beyond a reasonable doubt that the statute is in fact unconstitutional. . . . On appeal, a court will indulge in every presumption in favor of a statute's constitutionality. . . . If a penal statute provides fair warning, it will survive a vagueness attack. . . .

"If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness . . . . This court must also look to see whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." (Citations omitted; internal quotation marks omitted.) *State* v. *Branham*, 56 Conn. App. 395, 399–400, 743 A.2d 635, cert. denied, 252 Conn. 937, 747 A.2d 3 (2000).

The defendant's specific constitutional claim is that because the victim's and the defendant's birthdays are within two years of each other, the victim had the capacity to consent to sexual activity with the defendant. He claims that § 53-21 (2) is unconstitutional because it automatically presumes that subjecting the victim to contact with the defendant's intimate parts is likely to impair her health or morals and does not give regard to the age of the parties, specifically, whether the victim was capable of consenting to the contact. The defendant further argues that the purpose of § 53-21 (2) is "to protect young, innocent minors from corrupt, manipulative adults," not to subject sixteen year old defendants to the same consequences that "defendant[s] two, three or four times [his] age" would face were they also convicted of risk of injury to a child. The defendant mischaracterizes the purpose of the statute.

"It is well settled that § 53-21 proscribes two general types of behavior likely to injure physically or impair

the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." (Internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 567, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). A myriad of cases provide notification to potential offenders that subjecting or perpetrating acts on an unwilling victim under the age of sixteen is prohibited. *In re John C.*, 20 Conn. App. 694, 696, 569 A.2d 1154 (1990); see also *State* v. *Perruccio*, 192 Conn. 154, 162, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984), citing *State* v. *McCall*, 187 Conn. 73, 444 A.2d 896 (1982); *State* v. *Shaw*, 186 Conn. 45, 438 A.2d 872 (1982); *State* v. *Smith*, 183 Conn. 17, 438 A.2d 1165 (1981); *State* v. *Pickering*, 180 Conn. 54, 428 A.2d 322 (1980); *State* v. *Manning*, supra, 162 Conn. 112; *State* v. *Gelinas*, 160 Conn. 366, 279 A.2d 552 (1971); *State* v. *Anderson*, 152 Conn. 196, 205 A.2d 488 (1964); *State* v. *Dennis*, 150 Conn. 245, 188 A.2d 65 (1963); *State* v. *Coulombe*, 143 Conn. 604, 124 A.2d 518 (1956); *State* v. *Silver*, 139 Conn. 234, 93 A.2d 154 (1952). Moreover, as we stated in *In re John C.*, "[General Statutes §] 53-21 provides that *'any person'* who engages in the proscribed conduct is in violation of the statute." (Emphasis added.) *In re John C.*, supra, 696.

We conclude that the defendant in this case had notice that forcing a fourteen year old to perform a sexual act on him, namely, forcing her to masturbate him, is an act "directly perpetrated on the person of the minor injurious to [her] moral or physical well-being." (Internal quotation marks omitted.) *State* v. *Jason B.*, supra, 248 Conn. 567.

The defendant further relies on *State* v. *Perruccio*, supra, 192 Conn. 154, to support the proposition that

the statute is vague as applied to him because he was less than two years older than the alleged victim and was not on notice that sexual acts with a person under age sixteen who consented to those acts are proscribed by § 53-21. The defendant's reliance, however, is misguided. In *Perruccio*, our Supreme Court held that "[w]hen a person legally capable consents to or initiates sexual contact and activity, the case law and statute itself provide no fair warning or notice of statutory prohibition." Id., 165. The court ordered a new trial because the jury was not instructed that consent was a defense to the risk of injury charge and because the facts of that case were open to the interpretation that the victim did in fact consent to sexual activity with the defendant. Id., 165–66. In the present case, however, the court instructed the jury that it could not find the defendant guilty of risk of injury to a child unless it found that the victim did not consent to contact with the defendant's penis.[6] Because the jury found the defendant guilty, we conclude that the act was nonconsensual and that the statute is, therefore, not vague as applied to the defendant.

### III

The defendant's next claim is that the court improperly denied his petition for a new trial. He claims that

---

[6] The court's instruction to the jury, with respect to the risk of injury charge, provided in relevant part: "The focus is on whether the act was likely to impair the morals of the victim. In this case, the alleged victim was fourteen years old at the time of the incident in question, and the defendant claims that she consented to the sexual conduct which the state claims is the act perpetrated on her person likely to impair her morals. In this situation, where the alleged victim was age fourteen at the time in question, if she in fact consented to the sexual conduct the law provides that her consent is a defense. You must determine whether the victim consented to the sexual conduct involved. And such consent, however, in order to constitute a defense must have been freely and voluntarily given by her and not have been simply acquiescence induced by fear or shock or the product of coercion or the overpowering of her will by the defendant. . . . As the charge of risk of injury to a minor the consent of the victim as a defense . . . and to find the defendant guilty of risk of injury to minor

the existence of new evidence, specifically, testimony of witnesses unknown at the time of trial, requires a new trial in the interest of justice. We reject the defendant's claim.

The following additional facts are necessary for our resolution of this claim. During the hearing on the petition for a new trial, the defendant presented as a witness, B, a sixteen year old student at the victim's high school, who testified that after the incident at the club, the victim spoke with her and told her that she had not been raped. B did not contact authorities, however, until after the trial. Also, after the trial, B mentioned to the defendant's girlfriend that she knew something about the case. Another witness, J, testified that at a pool party, the victim stated that she lied about the incident, while a third witness, D, testified that at a party in 1997, the victim admitted that she lied about what the defendant had done to her.

The state presented evidence that the victim was not friends with B. Specifically, two witnesses testified that they were close friends with the victim and that they never heard the victim mention B's name. The victim's mother also testified that she never heard of B. The victim herself testified that she did not know B and never spoke with her about the incident. Defense counsel argued that B had inscribed the victim's high school yearbook, imputing "friendship." That claim, which was before the court on the motion, in conjunction with the other evidence adduced, was rejected.

"Connecticut has long recognized petitions for new trials based on newly discovered evidence. . . . The modern standard, or an equivalent formulation, adopted by a majority of state and federal courts for granting such a petition is based on the landmark case of *Berry*

you must be satisfied beyond a reasonable doubt that the victim did not consent to the defendant subjecting her to contact with his penis."

v. *State*, 10 Ga. 511 (1851). Connecticut adopted this general standard as early as 1880 in *Hamlin* v. *State*, 48 Conn. 92, 93 (1880), and has since applied it in a long line of cases. . . . Under this standard, a new trial is granted if the petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence (1) is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence, (2) would be material on a new trial, (3) is not merely cumulative, and (4) is likely to produce a different result in a new trial. . . . In analyzing the foregoing factors, trial courts are guided by the general principle that a new trial should be granted because of newly discovered evidence only if an injustice was done or it is probable that on a new trial a different result would be reached. . . . The scope of review of a trial court's decision to grant a new trial on the basis of newly discovered evidence is limited to whether the trial court abused its discretion." (Internal quotation marks omitted.) *Channer* v. *State*, 54 Conn. App. 620, 626–27, 738 A.2d 202, cert. denied, 251 Conn. 910, 739 A.2d 1247 (1999). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) Id., 628–29.

"This strict standard is meant to effectuate the underlying equitable principle that once a judgment is rendered it is to be considered final . . . and should be left undisturbed by post-trial motions except for a good and compelling reason." (Internal quotation marks omitted.) *Gray* v. *State*, 51 Conn. App. 689, 692, 725 A.2d 364 (1999).

In this case, in a well reasoned memorandum of decision, the court found that the defendant failed to show

by a preponderance of the evidence that a new trial should be granted. In particular, the court found that the new evidence presented was not likely to produce a different result. We agree with the judgment of the trial court.

At a new trial, each new witness would have offered testimony that would have impeached the victim's testimony. "Only under most exceptional circumstances, even in a capital case, could a witness' testimony be so important and influential that a court could, within the limits of a sound discretion, determine that new evidence merely impeaching the witness' credibility would probably produce a different result. . . . The rule restricting the right to a new trial when one is claimed on the basis of newly discovered evidence merely affecting the credibility of a witness is necessary because scarcely has there been an important trial, with many witnesses, where [after the trial] diligent search would not have discovered evidence [to impeach the character of] some witness on the trial." (Internal quotation marks omitted.) *State* v. *Edwards*, 10 Conn. App. 503, 515–16, 524 A.2d 648, cert. denied, 204 Conn. 808, 528 A.2d 1155 (1987).

In this case, the court found that a cross-examination of the new witnesses would have undermined their credibility and the weight that would be given to their testimony. For instance, B was close friends with the defendant's girlfriend, met the defendant several times over the past year and double-dated with the defendant and his girlfriend on at least one occasion, but never came forward with her story until after the trial, even though she knew that the defendant was arrested in 1997. Her testimony would be further undermined because the victim's supposedly confidential statement to B that she lied about the defendant occurred in a lavatory at school filled with ten or twelve other people.

Evidence also would suggest that B was not friends with the victim and was, therefore, an unlikely confidant.

Likewise, J would have testified that the victim told him that "the story is not completely true." Although J's testimony would raise some doubt in the minds of jurors, the court concluded that it is unlikely that the jury would give it great weight because the statement was so vague and, incredibly, was never brought to the defendant's attention until much later. D also would have testified that the victim told him that it was a lie, but that he, despite being at least an acquaintance of the defendant, failed to come forward until after the trial. Furthermore, evidence indicated that both J and D had poor relationships with the victim's family, which suggested that they would be biased against the victim. The court further noted that the victim appeared credible because she consistently presented the same version of the facts throughout the proceedings and that the jury so found her.

The trial judge in this case presided at the trial and at the hearing on the petition for a new trial and was, therefore, in the unique position to assess whether a new trial would produce a different result. Under these circumstances and giving every reasonable presumption in favor of its action, we conclude that the court reasonably could have found that the new evidence presented would likely not produce a different result. The court, therefore, properly found that justice did not require a new trial and did not abuse its discretion in denying the defendant's petition for a new trial.

### IV

The defendant's final claim is that he was not given a fair hearing on the petition for a new trial. Specifically, he claims that (1) the prosecution overzealously attacked the credibility of several witnesses resulting in a misconception by the court as to the scope of its

power in granting a new trial, and, as a result, the court improperly considered the credibility of the witnesses, which is a matter reserved for the jury, and (2) the social atmosphere in Fairfield County as a result of the Alex Kelly sexual assault trial made it impossible for any male wrongly accused of sexual assault to be acquitted. We are not persuaded.

The defendant's first claim of error is muddled. In support of his claim of prosecutorial misconduct, the defendant refers to several excerpts from the trial transcript where the court sustained some of the prosecution's objections and refers to various exceptions to the hearsay rule, including the spontaneous utterance exception and the effect on the listener exception. Thus, although couched in terms of prosecutorial misconduct, his argument appears to challenge the court's evidentiary rulings, rather than any particular actions on the part of the prosecution. We do not see how these rulings by the court relate to the defendant's claim of overzealous conduct and decline to address these claims of misconduct.

The defendant further directs us to excerpts where the prosecution cross-examined witnesses and claims that the prosecution intimidated the witnesses. He claims that in its closing argument, the prosecution "continues the denunciation of honest, intelligent students attempting to prevent injustice [and] attempts character assassination over a complainant that blithely under oath states that she never in her life had a conversation with [B]." He further argues that the prosecution improperly argued that the defendant "met [the victim] serendipitously at [the club] and within almost a matter of minutes of [meeting] you were insisting on an intimate contact with the victim, much to her surprise and much to her rejection."

It is well established that "[t]he burden [falls] on the defendant to demonstrate that the remarks [made by the

prosecution] were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Briley*, 55 Conn. App. 258, 263, 739 A.2d 293, cert. denied, 251 Conn. 927, 742 A.2d 363 (1999). The defendant has failed to meet his burden. In fact, the defendant fails to provide this court with anything more than a recitation of the prosecution's questions, the witnesses' responses and one quote from the prosecution's closing argument. Nor has the defendant provided this court with a single citation to the appropriate authority or with a legal analysis that would translate these recitations from the transcript into a claim of prosecutorial impropriety. We repeatedly have held that nothing more than bare statements of error will not be reviewed by this court. *Burke* v. *Avitabile*, 32 Conn. App. 765, 772, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993).

The defendant further appears to claim that the court improperly considered the credibility of the witnesses in determining whether a new trial would produce a different result. We again note the defendant's failure to address this claim adequately; notwithstanding, our review of the court's memorandum of decision indicates that the court fully understood its role in considering the petition for a new trial.[7]

---

[7] To determine whether the evidence would be likely to produce a different result if a new trial were granted, it was necessary for the court to consider the credibility of the witnesses to determine whether it was probable that the testimony of those witnesses would result in a different verdict had a new trial been ordered. See, e.g., *Lombardo* v. *State*, 172 Conn. 385, 392–93, 374 A.2d 1065 (1977) (trial court not persuaded that new witness' exculpatory testimony credible enough to result in different verdict); *Taborsky* v. *State*, 142 Conn. 619, 631, 116 A.2d 433 (1955) (new trial required where new evidence indicated that key witness, without whose evidence accused could not have been convicted, was insane at time of trial); *State* v. *Edwards*, supra, 10 Conn. App. 516 (trial court properly denied petition for new trial where only new evidence was disputed testimony of defendant's sister claiming that state's witness recanted testimony).

The defendant's claim that he was deprived of a fair hearing due to the atmosphere following the Alex Kelly case is likewise unsupported by legal argument. Moreover, if the defendant was concerned that he could not receive a fair trial, he should have moved for a transfer of prosecution to another court location. See Practice Book § 41-23 (1). Having failed to do so, the defendant waived his right to such a pretrial request. See Practice Book § 41-4.

We conclude that the court correctly stated the standard for determining whether to grant a petition for a new trial and properly applied each of its four prongs. We, therefore, see no reason to conclude that the defendant was deprived of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.