STATE OF CONNECTICUT *v.* FRANK IANNAZZI
(AC 21241)

Schaller, Flynn and Pellegrino, Js.

Argued December 6, 2001—officially released February 26, 2002

*Tracey M. Lane,* special public defender, with whom, on the brief, was *Kristen M. Brandt,* special public defender, for the appellant (defendant).

*Cynthia J. Palermo,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terrence Mariani,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, Frank Iannazzi, appeals from the judgment of conviction, rendered following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 and assault in the third degree in violation of General Statutes § 53a-61. On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress identification evidence, (2) denied his motion for a judgment of acquittal and (3) deprived him of a fair trial because the prosecutor made an improper comment during closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 4, 1999, at approximately 11:15 p.m., the victim, Thomas Morse, Jr., was walking home from his shift at a McDonald's restaurant in Waterbury. The defendant approached the victim and asked him for the time. The victim responded that he did not know the time and continued walking.

The defendant began to walk alongside the victim and the two engaged in conversation. During the conversation, the victim felt what he thought was a gun pointed at the back of his head. The defendant told the victim that he had a gun and demanded that the victim turn over his money. After the victim stated that he had no money, the defendant went through the victim's pockets and found a wallet. The defendant ripped the wallet off the chain to which it was attached and began to rifle through it. The defendant then punched the victim in the face and fled the scene.

The victim returned to the restaurant and reported the incident to the police. He also provided the police with a description of his assailant. The police later met with the victim and presented him with an array of photographs. The victim picked out the defendant's photograph as that of the man who had robbed and

assaulted him. The defendant was tried and convicted, and this appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion in denying his motion to suppress the identification evidence. Specifically, the defendant argues that the identification was unreliable because the police made a remark to the victim during the presentation of the photographic array that was unnecessarily suggestive and unreasonable.

The following additional facts are necessary for our resolution of the defendant's claim. At trial, the defendant sought to suppress the identification that the victim had made of him from the photographic array. The court held a hearing and in its memorandum of decision on the motion found that the police had presented the victim with an array of eight photographs, and that the victim had identified the first photograph, which was that of the defendant, as his assailant.

The court stated in its memorandum of decision that the testimony adduced at the hearing "did indicate that the police personnel may have said that they believed the suspect's photo was within the array, but they did not point that photo out to the complainant." The court further stated that "[t]he statement, if made by the police, that the suspect may [be] or is in this array does not rise to the level of impermissible or unnecessarily suggestive procedure." The court properly relied on our case law, which states that it is not suggestive, without more, for the police to inform the victim that the suspect is in the array. See *State* v. *Salmon*, 66 Conn. App. 131, 138, 783 A.2d 1193 (2001), cert. denied, 259 Conn. 908, 789 A.2d 997 (2002). The court concluded that the police procedure was not unnecessarily suggestive and denied the motion.

At the outset, we note our standard of review. "When a trial court denies a motion to suppress a pretrial identification, the standard of review is well established. Upon review of a trial court's denial of a motion to suppress, [t]he court's conclusions will not be disturbed unless they are legally and logically inconsistent with the facts. . . . [W]e will reverse the trial court's ruling [on evidence] only where there is abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error. . . . Because the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable." (Citation omitted; internal quotation marks omitted.) Id., 135.

Additionally, we note the applicable law that is relevant to a determination of whether a photographic identification was properly admitted into evidence. "[T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both

were incorrect." (Internal quotation marks omitted.) Id., 135–36.

In an effort to satisfy the first prong of the applicable test, the defendant argues that two simultaneous events, when taken together and given their combined effect, made the identification procedure unnecessarily suggestive. Specifically, his claim relies on what the police said to the victim when they gave him the array and how they presented the array.

In terms of what was said, the defendant maintains that the police told the victim that "the guy is in this picture." To support that contention, the defendant relies on part of the victim's testimony at trial. The victim stated, in response to a question about what the police had told him, that "[t]hey told me that they found the guy and they brought him into custody, and they told me that the guy is in this picture." With regard to how the array was presented, the defendant notes the uncontested fact that the defendant's picture was the first in the array.

The defendant argues that "[t]hese circumstances, namely, the detective informing the victim that 'the guy is in this picture,' coupled with the defendant's picture being number one in the array, made this procedure [a] suggestive . . . scenario . . . ." Although the detective who assembled the array testified that "[a] photo array is basically . . . individual folders, eight in number, put into a manila type envelope . . . [a]ll numbered one through eight," we note that it is not clear from the record the extent to which the victim viewed, or was able to view, the first photograph while the police were talking to him or immediately thereafter.

Although the defendant presents a novel argument, we are not persuaded by it. We first note that the defendant's argument rests on two factual predicates. The

first is that the police told the victim that the defendant was "in this picture"; the second is that the defendant's photograph was the first one that the victim had viewed. The court failed to find one of those underlying factual predicates.

Although the latter factual predicate is undisputed, the court's memorandum of decision does not support the former. As previously noted, the court found in its memorandum of decision that the testimony offered at the suppression hearing indicated "that the police personnel *may have said* that they believed the suspect's photo was within the *array* . . . ." (Emphasis added.) Moreover, in making its determination, the court stated that "[t]he statement, *if made* by the police, that the suspect may [be] or is *in this array* does not rise to the level of impermissible or unnecessarily suggestive procedure." (Emphasis added.)

We cannot construe that language as a finding by the court that the police told the victim the defendant was "in this picture." First, the court's memorandum of decision reveals that it made only qualified findings through the use of the phrases "may have said" and "if made." Second, those findings, notwithstanding their qualified nature, relate only to police statements regarding the *array* itself, not the individual photographs within the array. For that matter, the memorandum of decision does not even make clear that the court found that the police had told the victim that the defendant's photograph was in the array. Accordingly, the factual predicate underlying the defendant's claim, i.e., that the police in fact did inform the victim that "the guy is in this picture," is unsubstantiated.

As previously stated, questions of pretrial identification suppression involve fact bound determinations that a trial court is best equipped to make. Our standard of review dictates, therefore, that we not disturb the

court's findings of fact unless the record reveals clear and manifest error. There is no such error in this case. Our review of the record reveals considerable ambiguity with regard to the victim's testimony about what he was told by the police. At trial, the victim stated that "[t]hey told me that they found the guy and they brought him into custody, and they told me that the guy is in this picture." When he was asked if the police had said what specific photograph it was, however, he replied, "No." Additionally, during the suppression hearing, the victim was asked what he was told, and he stated that the police had told him that "we found the guy. . . . [T]hese are the group of photos, that we think that the guy is in there, and he is in that photo. We have a sneaky suspicion that it is one of the men that are in there." He then was asked if the police had pointed to any photograph and said that they believe it was the person in that photograph, and he replied, "No."

That testimony is unclear and ambiguous. In light of that, we cannot disturb the court's qualified finding that the police *may have told* the victim that the defendant's photograph was in the *array*. Because we conclude that the court's findings of fact were supported by the evidence, the defendant's claim must fail because he asserts and relies on a factual conclusion that is inconsistent with the court's findings. As we have noted, it is not suggestive, without more, for the police to inform the victim that the suspect is in the array. See id., 138. Moreover, because the court's conclusion was not inconsistent with the facts and was legally correct, the court did not abuse its discretion in denying the motion.[1]

---

[1] At oral argument before this court, the defendant advanced another argument, not included in his brief, as to why the identification was suggestive. He argued that it was suggestive for the police to tell the victim that the suspect was in the array presently at issue because the police did not make any similar comment to the victim when they presented him with previous arrays, from which the victim was unable to identify his assailant. That argument, however, must also fail for the same reason as the one briefed. Namely, it relies on a factual predicate that the court did not find.

## II

The defendant next claims that the court improperly denied his motion for a judgment of acquittal. Although the defendant frames his claim in the context of the propriety of the court's ruling on the motion, in essence he asserts that the state presented insufficient evidence from which the jury could find him guilty of the crimes charged.

Specifically, the defendant argues that because the victim "provided the sole evidence identifying the defendant as the perpetrator, had his identification testimony been properly suppressed by the trial court, the record would be devoid of any evidence identifying the defendant as the perpetrator. Thus, as the essential element of identity would have been lacking, the jury would not have been able to reasonably conclude [that the defendant was guilty] beyond a reasonable doubt."

The defendant's second claim depends on a favorable resolution of his first claim because it focuses solely on the victim's identification, the evidence that was the subject of the defendant's first claim. Because we have determined that the photographic identification evidence was admitted properly by the court, we need not review the defendant's second claim.

## III

The defendant finally claims that he was denied a fair trial because the prosecutor made an improper comment during closing argument that substantially prejudiced the defendant and resulted in a denial of due process. The defendant also asserts as part of his claim that in the alternative, we should invoke our supervisory authority and reverse the judgment of conviction because the prosecutor knew or ought to have known that his conduct was improper.

The following facts are necessary for our resolution of the defendant's claim. During his closing argument, defense counsel focused his remarks on reliability of the eyewitness identification. He discussed the photographic array as well as inconsistencies and inaccuracies in the victim's description of his assailant. In addition, counsel also made a brief argument relating to three or four plastic cards that were in the victim's wallet and that were recovered after the robbery. He noted that although police testimony revealed that plastic objects yield very good fingerprints, none were viewed or analyzed in this case. Except for that comment, however, defense counsel's closing argument focused solely on the reliability of the identification.

During the state's rebuttal argument, the prosecutor made the following remarks. "[T]he state doesn't need to prove fingerprints in this case. State doesn't need to prove fingerprints in any case. The evidence in this case is from the eyewitness who looked in the defendant's face as he was being robbed and then came in here, into court, looked over at him again and said, that's the guy who robbed me. That's the evidence. I don't have fingerprints. I don't have a photo showing that he was in the area and I don't have a videotape, but I have an eyewitness. The best evidence you can have."

We first note that the defendant did not preserve his claim at trial. On appeal, therefore, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] Our case law states that "[w]e will not

---

[2] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim. . . . The appellate tribunal is free . . . to

afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . . [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of the argument. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Bonsu*, 54 Conn. App. 229, 238, 734 A.2d 596, cert. denied, 251 Conn. 909, 739 A.2d 1249 (1999).

Additionally, although prosecutorial misconduct can occur in the course of closing argument, it is also imperative that we "review the challenged comments in the context of the entire trial, with due regard to the extent to which the objectionable remarks were invited by defense conduct or argument." (Internal quotation marks omitted.) *State* v. *Briley*, 55 Conn. App. 258, 262, 739 A.2d 293, cert. denied, 251 Conn. 927, 742 A.2d 363 (1999).

The defendant does not argue that a pattern of misconduct existed throughout trial, but rather asserts that the single comment, that an eyewitness is the best evidence you can have, is egregious unto itself because it pertained to the critical issue in the case, namely, the perpetrator's identity. We do not agree with the defen-

respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Solman*, 67 Conn. App. 235, 238, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002).

dant's assertion. Although the defendant argues that this comment was so blatantly egregious that it infringed on his right to a fair trial, we deem it permissible when viewed in light of our case law.

In *State* v. *Briley*, supra, 55 Conn. App. 258, the defendant challenged the prosecutor's rebuttal argument to the jury, which responded to the defendant's attack on the reliability of the eyewitness identification of the defendant. Id., 260–61. In that case, we noted that the prosecutor's remarks were invited by defense counsel's comments because they challenged the reliability of the eyewitness' identification of the defendant. Id., 263. In affirming the propriety of the comment, we stated that "[w]hen a prosecutor's allegedly improper argument is in direct response to matters raised by defense counsel, the defendant has no grounds for complaint. . . . Furthermore, the statements were made only on one occasion during closing argument." (Citation omitted; internal quotation marks omitted.) Id.

*Briley* is instructive in the present case because the transcript of the closing arguments reveals that defense counsel here, as in *Briley*, challenged the reliability of the eyewitness identification. Indeed, the thrust of the closing argument was an attack on the reliability of the eyewitness identification. Because the defendant raised that challenge in closing argument, the state was entitled to rebut the attack and to present a countervailing argument to the jury.[3] Moreover, as in *Briley*, the com-

---

[3] We note that although the state argues in its brief that the comment was in response to defense counsel's closing argument, the state references only the first few lines of the prosecutor's rebuttal argument, which discussed the fingerprints. Therefore, the state has not specifically asserted that the prosecutor's comment was in response to the reliability challenge. Though the excerpt in the state's brief is not extensive, we note that the portion cited leads into, and becomes enmeshed with, the remarks concerning eyewitness evidence. Moreover, on the basis of the overall context of defense counsel's closing argument, which clearly focused its thrust toward the identification, the state's argument that its comments were invited by the defense is persuasive despite its imprecision.

ment in the present case was an isolated one. Because the prosecutor's single comment in the present case was offered in response to defense counsel's closing argument, we cannot conclude that it was egregious or that the defendant was denied a fair trial. The defendant's *Golding* claim must fail.

The defendant also argues that if we conclude that *Golding* review is not appropriate, we should invoke our supervisory authority and reverse the judgment of conviction because the prosecutor knew or ought to have known that his conduct was improper. He argues that this measure is necessary because, in making the comment in issue, the prosecutor vouched for the credibility of the witness.

Our Supreme Court has stated that "even when prosecutorial misconduct is not so egregious as to implicate the defendant's right to a fair trial, an appellate court may invoke its supervisory authority to reverse a criminal conviction when the prosecutor deliberately engages in conduct that he or she knows, or ought to know, is improper. . . . Such a sanction generally is appropriate, [though], only when the [prosecutor's] conduct is so offensive to the sound administration of justice that only a new trial can effectively prevent such assaults on the integrity of the tribunal." (Internal quotation marks omitted.) *State* v. *Andrews*, 248 Conn. 1, 19, 726 A.2d 104 (1999).

We decline to invoke our supervisory authority in this case because we conclude that the prosecutor did not vouch for the witness and that his comment during closing was not inappropriate. As we have often stated, "[w]hile the prosecutor is permitted to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom, he is not permitted to vouch personally for the truth or veracity

of the state's witnesses." (Internal quotation marks omitted.) *State* v. *Moore*, 49 Conn. App. 13, 28, 713 A.2d 859 (1998). Additionally, though our law makes clear that "[t]he prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses"; (internal quotation marks omitted) *State* v. *Mitchell*, 66 Conn. App. 263, 273, 783 A.2d 1249 (2001), cert. denied, 259 Conn. 905, 789 A.2d 997 (2002); it is equally clear that he may "properly comment on the credibility of a witness where . . . the comment reflects reasonable inferences from the evidence adduced at trial." (Internal quotation marks omitted.) *State* v. *Holmes*, 64 Conn. App. 80, 93, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001). Moreover, "[i]t is not improper for a prosecutor to comment on the credibility of a witness as long as he neither personally guarantees the witness' credibility nor implies that he has knowledge of the witness' credibility outside the record." *State* v. *Jeudis*, 62 Conn. App. 787, 794, 772 A.2d 715, cert. denied, 256 Conn. 923, 774 A.2d 140 (2001).

In the present case, a key issue was the identity of the perpetrator. The state presented a witness, the victim, whom it argued could provide an eyewitness identification of the defendant as a result of the face-to-face confrontation. The defense challenged the eyewitness' reliability. Under those circumstances, and with the identity of the perpetrator at issue, commenting to the jury that an eyewitness is the best evidence the state can offer did not either personally vouch for the witness' credibility or imply that the prosecutor had knowledge of the witness' credibility outside the record. Rather, the comment was an acceptable and appropriate argument about the credibility of the victim because it squarely related to the reasonable inferences the jury could draw from the testimony of someone who was intimately

involved in the incident. We decline to exercise our supervisory authority in this case.

The judgment is affirmed.

In this opinion the other judges concurred.